The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, good morning. We're ready to hear argument in our next case, Payne v. Taslimi, and Mr. Dickey, you can proceed whenever you're ready. All right, thanks. Go ahead, Mr. Dickey, where you had left off. Thank you, Your Honor, and may it please the Court. Gilbert Dickey on behalf of Appellant Christopher Payne. This case involves the disclosure of deeply personal information, a prisoner's HIV status, for no reason. This Court and the Supreme Court have recognized that that information is protected from disclosure by the constitutional right to privacy, but the District Court dismissed Mr. Payne's complaint before a responsive pleading had even been submitted. The District Court concluded that neither this Court nor the Supreme Court have recognized any right to privacy in medical records. That decision is wrong and should be reversed. As an initial matter, the District Court applied the wrong standard. The ordinary Rule 12b6 standard applies to this case. That standard does not call. Now, the Supreme Court in Nassau specifically found that it did not find a constitutional right to informational privacy, didn't it? We don't understand Nassau that way. In Nassau, the Court assumed that there was a constitutional right to privacy and information. It explicitly said we assume that there is a constitutional right to privacy and information. Has the Supreme Court ever recognized a constitutional right to informational privacy? We read Whelan to recognize the constitutional right to privacy. In Whelan, the Supreme Court said... And you don't read Nassau to disavow that reading of Whelan? Nassau includes some broad language that suggests the Court might have had a narrower reading of Whelan, but that language is dicta. Because the Court had assumed that there is a constitutional right to privacy that protects information... I think you're muted, Judge Quattlebaum. Sorry. We have technical problems on our end, too. If Whelan created the right you say it did, how could the Supreme Court assume without deciding the existence of that right? That seems to be maybe not as direct as you could say, but effectively to determine, at least from the Supreme Court's perspective, that the Supreme Court has not recognized that right. What we read Whelan to say is that – I'm sorry, Nassau to say – is that there was some language in previous opinions that discussed this right, but that the Court was not going to get into whether the right existed, whether as created by those decisions, or from any different source. And so we think once the Court has assumed that there is a right, it doesn't need to address whether the right exists, whether that be because of Whelan, Nixon, or just because it's part of the tradition of privacy in this country. Counsel, so why shouldn't we, along that same line, read almost all of these cases that way? So you cited a number of cases for us, but in each case, I think – maybe you can give me a counterexample – but in each of those cases, they ultimately reject the privacy claim. Now, sometimes they do it by the second step, right? Sort of think about Saucier's two-step framework for qualified immunity. We've got a two-step framework here. Is there a right, and is the government interest sufficient to overcome the right? And it seems like quite a few of the cases that you rely on, like Watson and others, sort of effectively decides this at step two with very little and almost no discussion of step one, which, you know, makes sense. That's exactly what the Court does in NASA. Why wouldn't we read all these cases that ultimately reject the claim as relying on the second step and not needing to address this first step of whether such a right exists or what the scope of the right might be? Your Honor, I think that approach would be impossible to reconcile with what the Court did in Walz, which I think is this Court's clearest statement that the right to privacy protects personal information. In Walz, the Court said that personal private information in which an individual has a right to privacy is protected by – in which a person has an expectation of confidentiality is protected by the right to privacy. There were four pieces of information at issue in Walz. The Court addressed whether there was a reasonable expectation of – So except that, that's the right case. So when I look at Walz, that's the one case that is sort of difficult to square with all the rest. Help me understand where it says there's a reasonable expectation of privacy, which looks an awful lot like the very same language we use in the Fourth Amendment context. Why wouldn't we apply the principles of like Hudson to say whatever expectations might be outside of a prison, your expectations of privacy in a prison are fundamentally different? And we recognize that in cases like King v. Rubenstein, where we say maybe if you're going to cut somebody open, you've got a reasonable expectation there. But short of that, cases like Hudson suggest to us that whatever is true outside the Walz, there wouldn't be a reasonable expectation of informational privacy inside the Walz. It's true that the expectation of informational privacy might be different, but prisoners retain their constitutional rights to the extent that they are consistent with their status of prisoners. I'd point out that this court in Taylor noted without objection that prisoners had a right to privacy and information. In that case, it did. Well, it assumed it, and Taylor itself assumed it. The purported right is what Taylor talks about, right? So I'm with you that Walz might go beyond that, but Taylor just says the purported right, it, like NASA, is I think best read to assume the existence of such a right. Right. I think the overarching principle, Your Honor, is that individuals retain their constitutional rights to the extent they're consistent with their status as prisoners. Here, some right to privacy and information is consistent with the status as prisoners. Of course, there could be a punitive, a penological interest that could be advanced to explain why that right does not have the same weight in prison, and that's the approach many courts have taken. But here, we haven't even gotten to that step of assessing whether or not there was an adequate penological interest in this case. And then I'll let others ask, but Hudson doesn't do that in the Fourth Amendment context, right? In the Fourth Amendment context, we've got the same two-step inquiry, you might think. Do you have a right? So in other words, is it protectable? And then does the government's interest, exigent circumstances, or some justification overcome that right? In Hudson, the Supreme Court says, even if you might have some subjective expectation in your jail cell, we fail to recognize that as a reasonable expectation of privacy, the step one inquiry. And so why wouldn't we do the same thing here and say for an inmate who necessarily, you know, receives medications every day from various guards as they bring them by, who is housed in that type of a facility where that information is widely known, at least by the guards and medical personnel, that it's simply not a reasonable expectation of privacy under the WALLS test in the same way? We don't have to get to step two. It's a step one. Your Honor, I think the answer there is where Hudson might say, you know, there's no adequate interest here. The courts have applied a different approach to 14th Amendment privacy rights. Those rights are retained to the extent that they are consistent. But wait, wait, wait. So, but that's not, but the only case that you've got doesn't do that, right? WALLS, which is your best case, uses the very language that Hudson uses, right?  That's the same language. I mean, literally the same language that Hudson interprets to not be a reasonable expectation of privacy in your prison cell. It is similar language, Your Honor, but I think the important thing is that different constitutional protections translate differently to the prison context. And so while even if similar language is used, there might be less expectation that you would have Fourth Amendment rights in the prison cell. That has not been the approach this court or other courts have used to do process rights for a prisoner. I readily concede that WALLS might be wrong, but like that's the language, right? That is the language of WALLS, but even if the test for what is within the realm of privacy protected by due process relies on similar language, we think that the standard should be that the relevant inquiry is at the level of the constitutional protection and whether it can be reconciled with the prisoner status. Here, they've argued that there's no protection. That would allow every prisoner's medical condition to be announced over the intercom, for example. Let me follow up on that. I don't know that that is correct, is it? I mean, what it may mean is that there is no procedural due process constitutional right against that type of conduct. It doesn't mean that there might not be other remedies available under state law, under defamation, under all sorts of different issues. What we're talking about is not the exclusive remedy. It's whether the constitutional right to procedural due process applies here. Number one, let me shift gears because that's probably more of a statement than a question. I want to ask about a different issue that seems to me different here than the other cases. If I'm reading all the other cases, be they Supreme Court cases or be they Fourth Circuit cases, the place where the plaintiff is claiming the right is in being forced to disclose information to the government or in some way like that. They even trace back, if you look at Leyland's footnote 25 to Brandeis' famous right to be left alone. Here, your client isn't complaining about that. Your client appears to have given up the information or maybe was required to, but nevertheless, we're not talking about being forced to give it up. We're talking about third-party disclosure. While I realize that may be wrongful and may give rise to other claims, why is the fact that here we're not talking about forcing the plaintiff to give up personal information a critical issue in saying whether there's a right here? Your Honor, I agree that that's a critical issue, and I think it actually cuts in favor of Mr. Payne. In the cases where the courts have performed the balancing, they found it very important that there were protections against public disclosure, and there have been a handful of cases where the information actually was disclosed, and the plaintiffs are much more likely to prevail in those cases. I'd point the court to Woods v. White, a case out of the Seventh Circuit, I believe a district court in Wisconsin. There, there was an inadvertent disclosure of HIV status of a prisoner by a prison guard. The court found that that violated the prisoner's right to privacy and information. The Seventh Circuit affirmed that decision in an unpublished opinion. Also in Dovey City of New York, a case was dismissed for being outside where information was disclosed inadvertently about HIV status, was dismissed for the absence of a right to privacy. The Second Circuit, as we argue this court should hear, held that that violated a former employee's right to privacy and remanded to the district court to balance any compelling interest that might have been in that disclosure. So we argue that would actually cut in our favor. In the time you have left, could you tell me why the PLRA doesn't preclude your lawsuit since you don't allege physical injury and only allege money damages? Certainly. As an initial matter, we don't think the court needs to address that. That was never raised until the response brief in this case, and it's not the kind of clearly correct argument or argument necessary to avoid injustice that this court would ordinarily address. Well, it would avoid answering a constitutional question, and we can't, and constitutional avoidance is one of our things we look at. Yes, I understand, Your Honor. We think even if the court does reach that question, that it should remand to the district court because Mr. Payne filled out a form for a pro se complaint. He checked the box for damages and filled in the amount of damages he sought. This is exactly like Wilcox where this court held that an undifferentiated claim for damages is enough to include a claim for nominal damages and that a prisoner can seek nominal damages for the violation of a constitutional right. So we don't think that argument gets very far, and it is the kind of argument this court should avoid. I'd just point out there is a circuit split over whether a 14th Amendment violation needs emotional damages. We don't discuss that in the briefing, but that's why I say it's not the kind of clearly correct argument. If there are no questions, I will save time for rebuttal. All right, thank you. You have five minutes on rebuttal. All right, Mr. Quirk. Good morning. For the appellate – sorry, for the appellee, this is Christopher Quirk. So the appellant has raised some interesting points with regard to the split in the circuits as to whether the 14th Amendment or Fifth Amendment in the federal setting would protect constitutional rights to protection of privacy interests. However, I think the court wisely brought up at the beginning that that interest has been defined by the Supreme Court in dicta. It's the appellee's position that in Whelan, Nixon, and then eventually in NASA, that the court has avoided finding or holding that the Due Process Clause protects that right to informational privacy. All right, then, Mr. Quirk. The Fourth Circuit has not avoided finding that there is a privacy – an informational privacy right. And so if there's no Supreme Court decision saying that, as you've just said, why doesn't our precedent stand? Well, I think the court brought up earlier that Walls would probably be the case that's most on point for that issue. And the court also brought up that in Walls, the privacy interest that was – Well, not the whole court, just one member of the court. Sorry, sorry for that. There's three of us. Well, taking Walls first, the privacy interest that's described there is derived from Whelan. However, when they discuss the scope of that interest, they use a Fourth Amendment standard. That is not consistent with how the Supreme Court has defined what could be a due process right to informational privacy. So, as an initial matter, I believe that the Walls Court incorrectly applied a Fourth Circuit standard to test whether the right to informational privacy was violated, if you're comparing it to the Supreme Court precedent on the same issue.  I mean, you know, that may be true. I mean, it may look at the problem a little differently, but it's our precedent. So, I mean, you know, and we don't have the authority to overrule precedent. So, it seems to me you've got to deal with Fourth Circuit law and either say it was all derivative of Whelan, which is now in question, which is a, you know, you could do, but that's a pretty, you know, that's a pretty indirect way of the Supreme Court addressing our precedent. Or you've got to say that this is, what's talking about here is, you know, different in some way from Fourth Circuit precedent. So, you know, is your position that, you know, because of Nassau, anything that kind of relied on Whelan is out the window? Or is your position that, you know, this is different from the way the Fourth Circuit has applied informational privacy, or it doesn't meet our own test? I think the answer to that question is that all of the cases that were cited by the appellant with regard to informational privacy, as the court previously pointed out, are directed towards enjoining the government or some government actor from gathering information from individuals contrary or in violation of what their expectation of privacy is. So to distinguish this case from those cases, what the plaintiff has, and the appellant has asserted here, is that he has a cause of action for damages for the violation of a due process informational privacy right. None of the cases that the plaintiff has cited have actually found that such a cause of action exists. And so going back to the underlying opinion of the district court, the court was correct in saying that that cause of action does not exist in the Fourth Circuit. Whether the Fourth Circuit cases can be reconciled with that, I think the distinction that I just drew is how to reconcile that. So I just want to understand, your distinction is, this is not a critique, but is that the Fourth Circuit has recognized that you have an informational privacy right to not disclose it to the government, but that right does not exist to prohibit the government from disclosing whatever private information they have about you? I think that the interest that is in play in the Fourth Circuit cases is the one that derives from Wayland. But it's not a right that's recognized in the Supreme Court or even in the Fourth Circuit as one that creates a private cause of action for damages for violation of that interest. And so I think that if we're going to look at the precedent as guiding here, this really raises a novel question as to whether an individual whose due process or supposed to due process interest in informational privacy is violated, then has a claim for damages. And the Fourth Circuit has not found that such a claim exists. It is our position that finding that such a claim exists... I'm unclear as to how it is you distinguish this case from Watson, our Fourth Circuit case, that found that there was an informational privacy right in HIV-positive tests. In Watson, the court, again, went to the second step to determine whether the protections in place for that disclosure... And the background there, of course, is that there's a personal injury claim where the plaintiff wanted to determine if the Red Cross had properly screened a donor's HIV status before allowing that to enter the blood supply, which in turn allegedly caused injuries to the plaintiff's decedent. The court there, in determining whether such disclosure would violate the Constitution, immediately went to considering whether the protections in place by the prospective court order would avoid a disclosure that could violate that right. Again, this is the same type of... But here there was an actual disclosure, so there were no protections at all. There was an actual disclosure. And the court in Watson seemed to bend over backwards to make sure there were protections from such disclosure. Yes, Your Honor. It's unavoidable to recognize that in this entire stream of cases from the Supreme Court to the Fourth Circuit that there's a recognized interest at stake. The question is whether that interest is protected by the Due Process Clause. And in Watson, the court did not go as far to say that an individual's right to informational privacy would be violated or that the 14th Amendment would be violated by that disclosure. So for the specific issue before the court today as to whether this individual has a due process claim under 1983 for the disclosure, Watson does not state that he does. I think all these cases can be reconciled under the prevailing principle that constitutional avoidance has been the preference of the Supreme Court since 1977 until NASA came out. They've been criticized for that in concurrences by the Supreme Court in that it doesn't necessarily provide guidance to the lower courts or to the public at large with regard to where their rights are drawn. But at the same time, that is the preference of the Supreme Court. And I think in this case, if you look at the Prison Litigation Reform Act, it provides another basis for this court to consider whether this cause of action was cognizable at the time it was filed without reaching the constitutional issue, which has been routinely avoided for nearly 45 years. And what about the fact that the district court didn't consider that argument in the first instance? The district court did not consider that in the first interest, which is correct. But the cases that the appellant cited for whether the appellate court should take up issues that were not passed on below, they reflect a preference for fairness, that the other party be given notice for what issues will be brought up on appeal to develop a factual record so that they are not prejudiced by a late issue raised on appeal. This is a different type of case because it was screened before there was even responsive pleadings. There was no factual development. And so the fact that the lower court did not raise this issue, I don't think prejudices the appellant at all in this case. It is a new issue. What about your counsel's argument that the undifferentiated claim for damages can include a nominal claim, a claim for nominal damages, and that that survives the PLRA challenge for emotional or mental distress? Why is that wrong? I would say that's a good argument, honestly. But the problem with that argument is that I think it's based on a misreading of the Supreme Court's guidance as to which claims may merit a nominal damage award absent an actual injury. Cary is the seminal case on that point, where the Supreme Court found that for absolute rights that are violated, the plaintiff can still recover nominal damages absent an injury or an actual injury. Absolute rights are not clearly defined in that case, although the right that was implicated was the right to procedural due process. And I think a fair reading of Cary and its progeny is that for rights that don't require some balancing of the state's interest versus the individual's right, then you have nominal damages. Now, in appellant's favor, this court has not found that that is actually the standard. And the Fourth Circuit found that they removed the qualification that it must be a due process right, which is what was stated in Cary. And it changed it to just constitutional rights in general. So under Fourth Circuit precedent, yes, Cary has been modified. The Supreme Court has stated that on one level it's absolute rights, which were defined in that case as procedural due process. The Fourth Circuit has found that in invasions of Fourth Amendment rights, there can be a finding of nominal damages. So I would have to concede that the precedent of the Fourth Circuit would allow for a recovery of nominal damages, at least to the extent that Norwood is applicable in this case. Okay. Does that mean you're abandoning your alternative argument about the PLRA? It doesn't.  However, I must concede that the Fourth Circuit has found that Cary is more expansive than is literally written. So if the argument had to be modified in light of that, I think that the issues to be remanded to the district court would be whether the plaintiff's rights were violated in a manner that could rise to a claim of nominal damages. I think the PLRA as written clearly prevents plaintiff from recovering any compensatory damages. So taking those two issues together, I think that the only remandable claim at this point would be whether the plaintiff's de minimis violation of his substantive due process right, if one exists, to informational privacy, whether that right gives rise to a claim of nominal damages. So, counsel, if I could ask you to address another issue. If you kind of follow the Fourth Circuit cases that relate to this claim for an informational privacy right, you kind of, we've talked about Taylor and we've talked about Walls, and then I may not have them in complete order, but then you go to Watson. But the last three cases, if I'm right, both in Edwards and in Condon say that whatever right exists is limited to the sort of fundamental issues like marriage, procreation, abortion, and those type issues. And then the case after that is the Greenville Women's Clinic, which has medical information about abortion procedures. Do you believe that those cases appropriately define the scope of whatever informational privacy right exists? And if so, how do you square that with Walls? Yes, I think they can be squared with Walls. The Edwards case, I think, accurately described which areas of privacy have been found to be protected explicitly by this court. And the plaintiff points out that Condon was overturned by the Supreme Court. I think that it's worth pointing out that Condon was overturned on different grounds relating to the commerce clause, and it doesn't actually affect the holding in Edwards. And Edwards is actually consistent with one of the cases the plaintiff cited or appellant cited in his brief, which is Hodge. And in Hodge, the court cited the Supreme Court and stated that it does not want to take a more expansive view of authority to discover new fundamental rights embedded in the due process clause. I think that is a wise way of looking at the issue of substantive due process, which is that until there is actually a right recognized by the Supreme Court or explicitly by the Fourth Circuit, that there's no need to expand the concept of substantive due process into areas that, while maybe preferable and valued by society, are not necessarily contained in the due process clause. Squaring that with Walls and Greenville, I think the fact that the court did not actually find that the due process clause protects the interest to informational privacy is consistent with that preference not to create a substantive due process right in informational privacy. But the court, you still got to square that with the statement in Walls, financial information like that requested is protected by a right to privacy. And the financial information in Walls is broader than the description given in Edwards. And I think we can, you know, I agree with you that Watson may assume that question, but I don't see how you say Walls assumes the question when it says financial information is protected by a right to privacy. That seems to be a pretty square holding of our court. Which means, and couldn't have been overturned by Edwards, which means it must mean something more than what Edwards tells us, no? To the extent that the court has recognized that there is an interest that is protected, I think that your point is correct, that Walls does recognize that that interest is protected. However, the Supreme Court or the Fourth Circuit in Walls simply did not find that the due process clause creates a protection of that right. And it did not find that an individual has a claim for damages for violation of that right. So I agree that Edwards is not the final answer on the question. And cases like Walls address the interest that may be arguably contained in the due process clause, but Walls doesn't actually go as far to say that it is protected by the due process clause. And it, in fact, went to the Fourth Amendment to define the parameters of what that interest is. Okay. Can you give your view on the discussion I had with your colleague about Hudson? So assume that I just disagree with your reading of Walls, and I take Walls to say what Walls actually says. Why would I not apply the sort of principle of Hudson to say that the reasonable expectations of privacy and confidentiality are different in a prison context than they are outside of a prison context? And this is the step one inquiry, not the step two government interest inquiry. But in defining the reasonableness of the expectation, Hudson tells us it's different in a prison. Why wouldn't we say the same thing, applying Walls as it is to this same expectation of informational privacy? I think that in the prison context, the rights of the individuals are diminished and that the right to expectation of privacy is also diminished. So I would agree that if you were going to find that there is a due process right to informational privacy, that it would be different in the context of prison litigation, simply because the circumstances are different. And it's not necessarily a complete overlay with Fourth Amendment protections, but it is consistent with the idea that prisons are dynamics where the provision of medicine is going to be done in a more public setting, simply by the layout of the facility and the number of people there and the number of providers. So I think having a hard line rule that any disclosure of protected medical information, information that would be protected by HIPAA, for example, is actionable if disclosed in the prison setting would be unwise and create a deluge of litigation. And this goes back to the argument of the PLRA, which I won't belabor, but I think the PLRA reflects Congress's intent to limit the scope of claims that can arise out of the prison setting simply because the likelihood of frivolous or really de minimis violations that occur just naturally in the course of the prison setting are not the type of rights that need to be protected the same way they do for the public. All right. Do Judge Richardson or Judge Quattlebaum have any further questions? No. All right. Then, Mr. Quirk, you can wind up quickly. Okay. Well, then, the final point I would like to make is that our position is that the Supreme Court has never found that such a right exists. This Court does not need to find that the right exists in this case. And if the Court does feel inclined to at least recognize that the interest in informational privacy is protected by the Due Process Clause, it has the opportunity to look at the Prison Litigation Reform Act, the intent of Congress, and the fact that there are other statutory provisions that protect individuals' interest in privacy with regard to medical information and find that, in this case, the lower court properly dismissed this claim for not stating a valid cause of action. Thank you. All right. Thank you. And, Mr. Dickey, you have five minutes in rebuttal, so the clock should be changed to five minutes, please. Thank you, Your Honor. A few things. I'd like to start just by noting the Edwards argument. We agree that reading Edwards as an exclusive list cannot be reconciled with Walls, where this Court held that financial information is protected. This Court has also held since Edwards that items not included in that list were protected. Edwards was not a case about the right to privacy and information. It was about a general right to privacy. And, of course, this Court just a few years ago held that a prisoner has a right to privacy in medical decision-making. The Court should similarly conclude the prisoner retains a right to privacy in medical information here. Can I ask the question? You've said a couple times a right to privacy in medical information, which is a very broad set of information. Can you talk to me a little bit about why you choose that broadest level of generality? I mean, you could imagine a right to privacy in all medical information. You could imagine a right to privacy in communicable diseases. You could imagine a right to privacy in HIV, a right to privacy in other specific diseases. You choose this sort of very broad framing as a level of generality. Walk me through why you do that and why you think that's the right way of evaluating the right of informational privacy. Yes, Your Honor. I think courts have recognized that medical information generally is a private matter that can be protected. That being said, the standard – I think medical information is a helpful category that captures an area where there is often a reasonable expectation of confidentiality as laws noted as what's protected. But, of course, different medical information might be treated differently. There might be some information that receives no protection. For example, if you have a cold and the signs of that cold are visible, that might not be information that's protected. We don't think this court necessarily needs to draw a clear line on whether all medical information is in or what's out here because HIV is clearly information that is entitled to very heightened protection. It's very private information. It's a disease that cannot be cured still. Why should we think about it differently? The example of communicable diseases. We're in a time where COVID is on everybody's mind. That's why we're doing this remotely. Why do we think that communicable diseases, particularly in a prison context, are the types of diseases that one has an expectation of privacy in? I'm not sure that I see that. Maybe outside of a prison wall, although we could have that debate too. But why inside of a prison do we think communicable diseases are something you have a reasonable expectation of privacy in? If you get the flu, the prison officials immediately move you to the hospital, infirmary. That's revealing that you've got the flu. Yet, we, of course, want people to do that. That's the sort of thing that happens all the time. Why in the prison context for communicable diseases? Certainly. We think the initial question for whether a matter is protected is whether the right to privacy applies. That would look at society's approach to things. Here, we think the argument is quite strong for HIV. It's a permanent disease that's often associated with activities that are protected by the right to privacy. We do acknowledge that in the prison context, whether the balance could be substantially different, there could certainly be a compelling interest. But Hudson tells us we don't just look at it at the second step. We look at it at the first step of whether it's a reasonable expectation. In doing so, we take into account some pieces of the information that you might otherwise think are in the compelling interest piece. It can be factored in at the first step. HIV, we think, would clearly be protected. But the status might, for example, be different for COVID, where there's not the same stigma and there's not the same assumptions about how people contracted the disease. But here, because it's within the core, we don't think the court needs to draw a clear line. We think this right is clearly within the core of the right to privacy where you have a disease. You may think that, and maybe you're right, maybe not. But how we decide things affects not just your case, but other cases. It seems to me how we characterize the right, whatever you say it is, is important. If you're claiming a right to privacy about medical information concerning HIV, we can assess that. If you're claiming a broader right, we can assess that. We can be broad or narrow, but your case will be gone and we have others and how we decide it affects those. Are you going to insist that the right you're talking about is to privacy and medical information? Is that your position and want us to decide it on that basis? No, Your Honor. We do not take the position that all medical information is entitled to protection. We use that as a shorthand for a category of information, but of course you have to look at each piece of information individually. If that's not your category of information, what is it? Mr. Payne thinks that the revelation of his HIV status violated his right to privacy and that is what he would like this court to recognize as protected. So you think the right that you're asserting, I realize it's based on the individual informational privacy, but your claim now, or not now, maybe it's been that all along, but is that it applies to medical information related to HIV diagnosis? Yes, we mentioned cases about medical information because that is one area, but we are not asking the court to recognize that all medical information necessarily receives protection. The important thing is medical information is an area where there's a lot of protected information and this is very sensitive medical information that is entitled to protection. That's the point we were trying to make, Your Honor. Anything else, Judge Richardson or Judge Quattlebaum? All right, then. Thank you for your argument, Mr. Dickey. Thank you, Your Honor. At this point, as you all know, if we were in Richmond, we would step down from the bench and greet counsel. Consider yourselves graciously greeted on behalf of the Fourth Circuit Court of Appeals. And Mr. Dickey, the court understands that you are court-appointed. We appreciate your representation of Mr. Payne. We could not do this without you. And certainly, we also appreciate your argument, Mr. Quirk. This was an interesting case and interesting argument. So, thank you, and court will be adjourned until tomorrow morning. This Honorable Court stands adjourned.
judges: Stephanie D. Thacker, Julius N. Richardson, A. Marvin Quattlebaum Jr.